UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JESSE CAMPBELL, III,<br><br>                Plaintiff,<br><br>v.<br><br>THERESA LANTZ, et al.<br><br>                Defendants. | Civil Action No. 3:19-cv-1512 (CSH)<br><br>May 14, 2021 |

### RULING ON ATTORNEY MICHAEL R. KELLER'S
### MOTION FOR RELIEF FROM *PRO BONO* APPOINTMENT

**HAIGHT, Senior District Judge:**

    Attorney Michael R. Keller ("Keller") moves, pursuant to Local Civil Rule 83.10(g), for relief from his appointment as *pro bono* counsel to Plaintiff Jesse Campbell, III ("Campbell"), in this action brought under 42 U.S.C. § 1983 against various individuals employed by the Connecticut Department of Correction ("CDOC") and associated with Northern Correctional Institution ("Northern"). *See generally* Doc. 61 ("Keller Mot."), Doc. 65 ("Keller Supp."). The Court designated Keller to represent Campbell following my grant of Campbell's motion to appoint counsel. *See* Docs. 55, 56.

    In his initial brief, Keller argued that the Court should grant relief from the appointment because representing Campbell "would create a conflict of interest for [himself] and his firm in violation of" Connecticut Rules of Professional Conduct 1.7 and 1.9. Keller Mot. at 1. Specifically, "the requested representation would create a conflict of interest as it would require [Keller] and [his] Firm to take positions that are materially and directly adverse in substantially related matters to current and prior positions taken on behalf of the Firm's existing clients." *Id.* at 1–2. Keller represented that "The Firm is currently, and has previously been, retained to represent

and defend . . . medical professionals in pending lawsuits in Connecticut state and federal courts brought by *pro se* prisoners against the DOC, health services administrators, wardens, doctors, nurses, and medical professionals providing medical care for the prisoners, including defendants named in this case," including against claims brought pursuant to 42 U.S.C. § 1983. *Id.* at 4.

By electronic order dated February 24, 2021, I directed Keller to file a supplemental brief providing clear and specific details of the conflicts he and his firm perceived would arise if Keller's representation of Campbell were to go forward. *See* Doc. 62. I found that Keller had not yet supplied an adequate record of the purported conflicts between Campbell and other clients of Keller and Keller's firm for the Court to determine that those conflicts actually exist and that relief from appointment would be appropriate, in line with the requirements Rules 1.7, 1.9 and 6.2 of the Connecticut Rules of Professional Conduct and Local Civil Rule 83.10(g). *Id.*

Keller timely submitted his supplemental brief on March 12, 2021. In it, Keller states that his firm, Morrison Mahoney LLP ("Morrison Mahoney"):

> currently and previously represented an entity named Cell Staff, [which] provides medical professionals and nurses on a contract basis to facilities and prisons operated by [CDOC]. . . . The medical professionals are assigned within [CDOC] to triage, assess, and treat inmates' chronic, acute, psychological, and medical needs during incarceration. The Cell Staff medical professionals work under the supervision of various employees of [CDOC,] including the health services administrators, wardens, doctors, and nurses, including several of the named defendants in this lawsuit.

Keller Supp. at 1–2. Keller identifies six pending and resolved cases in this Court and Connecticut Superior Court where Morrison Mahoney has represented or currently represents Cell Staff and its employees. *Id.* at 2–4. Keller represents that "The plaintiffs in these cases generally pursue claims similar to those of [Campbell], alleging that [CDOC's] policies and procedures are deficient with respect to: how inmates are evaluated for access to various types of medical treatment and the type, amount or quality of the treatment . . . ." *Id.* at 4. Keller further represents that "In our prior and

2

current representation of Cell Staff and its employees, [Morrison Mahoney attorneys] have learned about Cell Staff's policies and procedures as well as the policies of [CDOC] with which Cell Staff [are] required to comply." *Id.* Additionally, Keller notes that several Cell Staff employees are sited at Northern, and that "[g]iven the relatively small number of inmates at [Northern] . . . it is very likely that Cell Staff employees have either treated or interacted with [Campbell] during his treatment." *Id.* at 5.

Keller explains that representing Campbell "would require [Morrison Mahoney] to sue the very entity and individuals that our clients work for," and by whom they are supervised. *Id.* at 5–6. Keller argues that Campbell's "allegations . . . that the named Defendants 'failed to hire sufficient staff to provide adequate evaluation, diagnosis, and treatment to mentally ill prisoners . . .' and 'failed to adequately train DOC staff to deal with mentally ill prisoners . . .' [are] a direct criticism that Cell Staff's employees are not competent to provide adequate treatment and/or that the supervision of medical employees . . . including those provided by Cell Staff, is inadequate." *Id.* at 6. Keller maintains that, in pressing Campbell's claims against the CDOC individuals whose conduct is at issue in this case, Morrison Mahoney would be required to take positions "directly adverse to and in conflict with [its] representation of Cell Staff," including arguing that staff at Northern are inadequately trained and not competent to perform their assigned duties, that policies and procedures for providing medical care at Northern are inadequate, and that medical care provided at Northern is substandard. *Id.* at 7. Keller represents that, if successful in making these arguments, "it would be directly adverse to [Cell Staff's] interests in any of the other cases in which we represent them." *Id.*

Keller and his firm have discussed the issue of Keller's representation of Campbell with Cell Staff. Keller states that "[a]fter discussing the scope of [Campbell's] current complaint . . . our client feels that their confidentiality and our duty of loyalty to them will be compromised if we were

3

required to move forward as *pro bono* counsel for [Campbell]," based on information Morrison Mahoney has acquired in the course of its representing Cell Staff in other matters. *Id.* at 8. Cell Staff is not willing to waive the apparent conflict raised by Keller's representation of Campbell. *Id.* at 9.

Local Civil Rule 83.10 expressly states that "[m]otions for relief from appointment are disfavored, as the Court views the acceptance of pro bono assignments from time to time as a professional responsibility of the attorneys who are members of its Bar." *See* D. Conn. L. Civ. R. 83.10(g). To be granted, any such motion must comply with Rule 6.2 of the Connecticut Rules of Professional Conduct, which provides that "[a] lawyer shall not seek to avoid appointment by a tribunal to represent a person except for good cause, such as: . . . [r]epresenting the client is likely to result in violation of the Rules of Professional Conduct or other law . . . ." *See* D. Conn. L. Civ. R. 83.10(g); Conn. R. Prof'l Conduct 6.2. Among other things forbidden by the Rules of Professional Conduct, a lawyer may not represent a putative client where "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client [or] a former client." Conn. R. Prof'l Cond. 1.7(a)(2). As relevant here, conflicts of interest in many circumstances are imputed to all members of a given law firm. *See* Conn. R. Prof'l Cond. 1.10.

In the case at the bar, in light of the facts presented by Keller in his supplemental brief, the Court is persuaded that relief from appointment should be granted. Keller's appointment risks significant conflicts between his firm—Morrison Mahoney—and the interests of a current and former client of the firm, Cell Staff. If the appointment were continued, the Court agrees with Keller that it is reasonably likely that Keller would be required to advocate positions regarding Northern medical staff's actions, as well as CDOC's policies and procedures related to medical care in CDOC facilities, that would be contrary to the interests of Cell Staff as an existing client of

4

Morrison Mahoney in other litigation, in relation to Campbell's claim of Defendants' deliberate indifference to his mental health needs in violation of the Eighth Amendment. Within the language of Rule 1.7, Keller's representing Campbell would "materially limit" Morrison Mahoney's ongoing representation of Cell Staff and its employees. Because Cell Staff has not consented to the apparent conflict, after consultation with Morrison Mahoney regarding the same, the exception to Rule 1.7's bar does not apply to Keller's putative representation of Campbell. *See* Conn. R. Prof'l Cond. 1.7(b)(4) ("Notwithstanding the existence of a concurrent conflict of interest under subsection (a), a lawyer may represent a client if: . . . (4) each affected client gives informed consent, confirmed in writing.").

Accordingly, Keller's motion for relief from his appointment as *pro bono* counsel for Campbell is GRANTED. The Clerk is directed to terminate Keller's appointment, and to begin the process of selecting new counsel to represent Campbell; in view of the imputation of conflicts of interest under Rule 1.10 of the Connecticut Rules of Professional Conduct, no such replacement counsel shall be a member of the firm Morrison Mahoney LLP. All deadlines in this case remain stayed, pending the results of that renewed search.

It is SO ORDERED.

Dated: New Haven, CT
  May 14, 2021

*s/ Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge